**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JOYCE ANN ESTES,<br>Plaintiff,<br>v.<br><br>FRATELLI BERETTA USA, INC. and<br>COSTCO WHOLESALE CORPORATION,<br><br>Defendants. | **CIVIL NO. 4:24-CV-1119-SDJ** |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND JURY DEMAND**

COME NOW, Joyce Ann Estes., by and through her attorneys, Crain Brogdon LLP complaining of the Defendants, Fratelli Beretta USA, Inc. and Costco Wholesale Corporation, collectively ("Defendants"), respectfully alleges as follows:

**PARTIES**

1. Plaintiff Joyce Ann Estes. ("Plaintiff" or "Ms. Estes") was, and still is a resident of Van Alstyne, Texas, Grayson County.  She was, and still is a citizen of the State of Texas when the events made the basis of this suit occurred.

2. Defendant Fratelli Beretta USA, Inc. ("Fratelli") is incorporated in the State of New Jersey with its headquarters and principal place of business located in New Jersey at 750 Clark Drive, Mount Olive, NJ 07828, Morris County.  It may be served by serving its registered agent, ALLEN SUSSER, ESQ., at Cohn, Lifland, Pearlman, Herrmann, Knop, 250 Pehle Avenue, Suite 401, Saddle Brook, NJ 07663.  Fratelli processes, packages and sells Italian cured meats and other Italian cuisines.

3. Defendant Costco Wholesale Corporation ("Costco") is incorporated in the State of Washington with its headquarters and principal place of business located in Washington State at 999 Lake Drive Issaquah, WA 98027. It may be served by serving its registered agent, John Sullivan at 999 Lake Drive, Issaquah, WA 98027-8990.  Costco is a membership warehouse club that sells name-brand food and merchandise to customers at its hundreds of warehouse locations worldwide, including its warehouse located at 3650 W. University Drive, McKinney, Texas 75071, Store #1284.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

5.      Venue properly lies in the Eastern District of Texas – Sherman Division, pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in that district. Venue is also properly laid in this Court pursuant to 28 U.S.C. § 1391 (b)(3) in that Defendant Costco operates, and does business, within the district in which the Court is located, and is subject to this Court's personal jurisdiction.

## FACTS

### *Fratelli Beretta Contaminated Uncured Antipasto Trays*

6.      Defendant Fratelli processes, packages, and distributes processed Italian meat trays which are sold at various retailers throughout the country, including at Costco stores.

7.      This includes the product known as "Fratelli Beretta Antipasto Gran Beretta 12 oz. Black Pepper Coated Dry Salami, Italian Dry Salami, Dry Coppa and Prosciutto 14:17 Lot

L021330601 USDA, EST #7543B," with "best by" dates on or before April 30, 2024 (the "Antipasto Trays").

8.      The Antipasto Trays bore establishment number "EST. 7543B" printed on the packaging next to the best by date and were assigned 14:17 Lot L021330601 USDA.

9.      The ready-to-eat (RTE) Antipasto Trays were produced by Fratelli, and Fratelli shipped the Antipasto Trays to retail locations nationwide, including Costco warehouses.

10.     Fratelli's Antipasto Trays with best by dates on or before April 30, 2024 (with 14:17 Lot L021330601 USDA) were processed, sliced, manufactured, packaged, stored, and distributed from a Fratelli's food processing facility.

11.     Costco was one of the retailers who accepted delivery of the contaminated Antipasto Trays for the purposes of selling the Antipasto Trays in their warehouses, including its warehouse located at 3650 W. University Drive, McKinney, Texas 75071, Store #1284. (the "McKinney Costco").

12.     Unbeknownst to Costco's members, including Plaintiff, the subject Antipasto Trays were contaminated with *Salmonella 1 4:i*.

**Plaintiff's Consumption of the Product and her Subsequent Illness**

13.     At all relevant times to this action, Costo offered the contaminated Fratelli Antipasto Trays for sale to its customers at the McKinney Costco.

14.     On December 11, 2023, Plaintiff was a Costco Member with Member # 111824839858.

15.     On December 11, 2023, Ms. Estes purchased the Fratelli Antipasto Tray from the McKinney Costco. The purchase receipt for the transaction of December 11, 2023 included "Item 1074880, Antipasto2P, $12.99."

16.    Following Plaintiff's purchase of the subject Antipasto Tray, Ms. Estes consumed the product on December 25, 2023.

17.    On or about January 9, 2024, Ms. Estes was hospitalized with extreme abdominal pain, and uncontrollable diarrhea. Ms. Estes was admitted from January, 2024 through February, 2024. She underwent a colectomy surgical procedure, and now may be required to wear an ostomy bag for the rest of her life. Her symptoms began following her consumption of meat from the Fratelli Antipasto Tray.

18.    It was later determined that Ms. Estes was suffering from a serious, deadly infection caused by *Salmonella 1 4:I - -* exactly the strain of Salmonella that contaminated the Antipasto trays.

### *The Recall*

19.    On January 18, 2024, the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") posted on its website details of an ongoing investigation into a Salmonella outbreak linked to Italian-style meats. The public health alert advised as follows:

**FSIS Announcement**

**WASHINGTON, Jan. 18, 2024 -** The U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) is issuing a public health alert out of an abundance of caution due to concerns about *Salmonella* illnesses that may be associated with ready-to-eat (RTE) charcuterie meat products in Busseto brand Charcuterie Sampler and Fratelli Beretta brand Antipasto Gran Beretta.

The Fratelli Beretta brand Antipasto Gran Beretta was sold at Costco in a 24-oz. twin-pack (two 12-oz. trays). The Busseto brand Charcuterie Sampler was sold at Sam's Club in an 18-oz. twin-pack (two 9-oz. trays). Any lot code associated with either product is potentially contaminated. The products are no longer available for purchase at Costco and Sam's Club.

The products of concern bear establishment number "EST. 7543B" and/or "EST. #47967" inside the USDA mark of inspection or printed on the package. Label images can be found in the Centers for Disease Control and Prevention (CDC) Food Safety Alert.

FSIS has been working with the CDC and state public health partners to investigate a multistate outbreak of 47 *Salmonella* I 4:i:- illnesses in 22 states with onset dates ranging from November 20, 2023, through January 1, 2024. In the ongoing outbreak investigation, the state of Minnesota identified the outbreak strain from an unopened Busseto brand charcuterie sampler, which led to recall 01-2024 on January 3, 2024. FSIS will continue the investigation and issue new information as it becomes available.

Consumption of food contaminated with *Salmonella* can cause salmonellosis, one of the most common bacterial foodborne illnesses. The most common symptoms of salmonellosis are diarrhea, abdominal cramps, and fever within 6 hours to 6 days after eating the contaminated product. The illness usually lasts 4 to 7 days. Most people recover without treatment. In some persons, however, the diarrhea may be so severe that the patient needs to be hospitalized. Older adults, infants, and persons with weakened immune systems are more likely to develop a severe illness. Individuals concerned about an illness should contact their health care provider.

FSIS is concerned that some product may be in consumers' refrigerators. Consumers who have purchased these products are urged not to consume them. These products should be thrown away or returned to the place of purchase.

Media with questions regarding the public health alert can contact Marco Lastrico, Public Relations, Busseto Foods, at 917-634-1685 or m.lastrico@barabinousa.com. Consumers with questions regarding the public health alert can contact the Busseto Recall Hotline at 866-552-4916.

Consumers with food safety questions can call the toll-free USDA Meat and Poultry Hotline at 888-MPHotline (888-674-6854) or send a question via email to MPHotline@usda.gov. For consumers that need to report a problem with a meat, poultry, or egg product, the online Electronic Consumer Complaint Monitoring System can be accessed 24 hours a day at https://foodcomplaint.fsis.usda.gov/eCCF/.

*See https://www.fsis.usda.gov/recalls-alerts/fsis-issues-public-health-alert-ready-eat-charcuterie-products-due-possible*

20.    On January 18, 2024, Fratelli sent a mailer to the Costco Members who purchased the Antipasto meat.  The mailer read, as follows:



January 18, 2024

Dear Costco Member:

Costco records indicate you, or one of your add-on members, have purchased Item # 1074880 Fratelli Beretta Antipasto 2/12oz between November 16, 2023 and January 9, 2024.



In an abundance of caution for consumer's safety, Fratelli Beretta USA has issued a voluntary market withdrawal of this item due to possible salmonella exposure.

All product with a Best By date before June 13 24are included in this market withdrawal.  The Best By date can be found on the front of the package, as shown to the right.

If you have any of this product remaining, do not consume the product. Please return it to your local Costco for a full refund.

Contact Fratelli Beretta USA with any questions at 866-552-4916 Monday to Friday from 8:00 AM to 8:00 PM ET.

We apologize for any inconvenience this voluntary market withdrawal may cause.

Sincerely,

Simone Bocchini
Chief Operating Officer
Fratelli Beretta USA, Inc.

21.    The product described and depicted in Fratelli's January 18, 2024 mailer was the exact product – the Antipasto Tray – that Mrs. Estes purchased at the McKinney Costco on December 11, 2023 and that Mrs. Estes consumed in December, 2023 immediately before her hospitalization.

22.    The product described and depicted in Fratelli's January 18, 2024 mailer was the exact product – the Antipasto Tray – was produced, packaged, stored and distributed from Fratelli's production facility.

23.    Also on January 3, 2024, FSIS issued an Announcement providing as follows:

**FSIS Announcement**

Editor's Note: FSIS and our public health partners, including the Centers for Disease Control and Prevention (CDC) and state public health officials, are investigating a *Salmonella outbreak*. The unopened, intact, charcuterie sampler that led to this recall was tested by the state of Minnesota and the results showed it was positive for the outbreak strain. Further traceback of the charcuterie meat used to produce the recalled products is ongoing.

WASHINGTON, Jan. 3, 2024 – Fratelli Beretta USA, Inc., a Mount Olive, N.J. establishment, is recalling approximately 11,097 pounds of Busseto Foods brand ready-to-eat charcuterie meat products that may be contaminated with *Salmonella*, the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) announced today.

The ready-to-eat (RTE) charcuterie sampler product was produced on October 30, 2023. The following products are subject to recall [view labels]:

- 18-oz. plastic tray packages containing "BUSSETO FOODS CHARCUTERIE SAMPLER Prosciutto, Sweet Sopressata, and Dry Coppa" with lot code L075330300 and "BEST IF USED BY APR 27 24." The products are sold as a twin pack with two 9-oz. packages.

The products subject to recall bear establishment number "EST. 7543B" inside the USDA mark of inspection and "EST. #47967" printed with the lot and date codes. These items were shipped to Sam's Club distribution centers in Georgia, Illinois, Indiana, Minnesota, North Carolina, Ohio, Oklahoma, and Texas.

The problem was discovered when FSIS was notified that a sample collected by the Minnesota Department of Agriculture tested positive for *Salmonella*.

FSIS is working with the Centers for Disease Control and Prevention (CDC) and state public health partners to investigate a multistate outbreak of *Salmonella*. Minnesota collected unopened ready-to-eat charcuterie sampler product as part of the investigation. The product tested positive for *Salmonella*. Further testing is ongoing to determine if the product sample is related to the outbreak. The investigation is ongoing.

Consumption of food contaminated with *Salmonella* can cause salmonellosis, one of the most common bacterial foodborne illnesses. The most common symptoms of salmonellosis are diarrhea, abdominal cramps, and fever within 6 hours to 6 days after eating the contaminated product. The illness usually lasts 4 to 7 days. Most people recover without treatment. In some persons, however, the diarrhea may be so severe that the patient needs to be hospitalized. Older adults, infants, and persons with weakened immune systems are more likely to develop a severe illness. Individuals concerned about an illness should contact their health care provider.

FSIS is concerned that some product may be in consumers' refrigerators. Consumers who have purchased these products are urged not to consume them. These products should be thrown away or returned to the place of purchase.

FSIS routinely conducts recall effectiveness checks to verify recalling firms notify their customers of the recall and that steps are taken to make certain that the product is no longer available to consumers. When available, the retail distribution list(s) will be posted on the FSIS website at www.fsis.usda.gov/recalls.

Media with questions regarding the recall can contact Marco Lastrico, Public Relations, Busseto Foods, at 917-634-1685 or m.lastrico@barabinousa.com. Consumers with questions regarding the recall can contact the Busseto Recall Hotline at 866-552-4916.

Consumers with food safety questions can call the toll-free USDA Meat and Poultry Hotline at 888-MPHotline (888-674-6854) or send a question via email to MPHotline@usda.gov. For consumers that need to report a problem with a meat, poultry, or egg product, the online Electronic Consumer Complaint Monitoring System can be accessed 24 hours a day at https://foodcomplaint.fsis.usda.gov/eCCF/.

See https://www.fsis.usda.gov/recalls-alerts/fratelli-beretta-usa-inc--recalls-busseto-foods-brand-ready-eat-charcuterie-meat

24.     On March 28, 2024 CDC confirmed that epidemiologic data showed that Fratelli Beretta brand prepackaged Uncured Antipasto Trays made people sick. Specifically, a total of 104  people infected with the outbreak strains of  *Salmonella 1 4:i*, were reported from 33 states (see map). The true number of sick people in the outbreak was likely much higher than the number reported, and the outbreak may not be limited to the states with known illnesses. See Investigation Update: Salmonella Outbreak, Charcuterie Meats, January 2024 | Salmonella Infection | CDC

25.     Illnesses started on dates ranging from November 20, 2023, to February 10, 2024 (see timeline). Sick people ranged in age from 1 to 92 years, with a median age of 48, and 40% were female. Of 92 people with information available, 27 were hospitalized. No deaths were reported. See Investigation Update: Salmonella Outbreak, Charcuterie Meats, January 2024 | Salmonella Infection | CDC

26.     According to the CDS, as of March 28, 2024, the outbreak was over. See:

Salmonella Outbreak Linked to Charcuterie Meats, January 2024 | Salmonella Infection | CDC

27.     As a result of the incident, Plaintiff has suffered severe, ongoing and continuing injuries to her gastrointestinal tract, among other areas of the body. Her symptoms are still unresolved and have led to the aggravation and exacerbation of other medical conditions, causing Plaintiff's health to be seriously compromised. Plaintiff has and continues to require extensive medical treatment as a result of the Salmonella exposure, and has and continues to suffer great physical pain and emotional distress.

***Actions by Fratelli and Costco Before the Outbreak***

28.     Fratelli manufactured the contaminated food items that are the subject of this action, with knowledge that the products would be distributed into the interstate marketplace, including to consumers in the State of Texas, including patrons of the McKinney Costco.

29.     Fratelli was aware that the products that it manufactured for sale in Costco's retail locations would be disturbed in the interstate marketplace, including to consumers in the State of Texas.

30.     Fratelli has committed a tortious act causing injury to a person within the State of Texas while, at all relevant times:

   a.   regularly doing or soliciting business, and/or engaging in a persistent course of conduct, and/or

   b.   deriving substantial revenue from good used or consumed, or services rendered in the State of Texas (namely, for example, its business dealings with Costco); and (ii) expecting or reasonably expecting the act to have consequences in the State of Texas and deriving substantial revenue from interstate or international commerce.

31.     Fratelli manufactured and distributed a defective, unsafe and contaminated food product named "Fratelli Beretta Antipasto Gran Beretta 12 oz. Black Pepper Coated Dry Salami, Italian Dry Salami, Dry Coppa and Prosciutto " which Defendant Costco did then sell to the Plaintiff.

32.     Costco is one of the largest and most sophisticated retailers in the United States. According to its published statements, its mission is "to continually provide our members with quality goods and services at the lowest possible prices." It also pledges to "comply with safety and security standards for all products sold" and "provide high quality, safe and wholesome

food products by requiring that both suppliers and employees be in compliance with the highest food safety standards in the industry."

33.     Costco is well aware of the dangers associated with foodborne pathogens, including *Salmonella,* in the food it sells. For example, its meat products have been implicated in prior foodborne illness outbreaks including those involving *E.coli* 0157:H7. As a result, Costco requires vendors of food products known to be at higher risk for containing foodborne pathogens to take greater precautions. Upon information and belief, in the case of its ground beef suppliers, Costco requires additional testing for *E.coli* 0157:H7.

34.     Fratelli and Costco knew or should have known that producing uncured meat on a large scale further increases the risk of bacterial contamination; and that production facilities used for uncured meat should have heightened safety standards to account for these risks.

35.     Upon information and belief, prior to the foodborne illness outbreak described herein, Costco implemented product safety practices, policies, and procedures for selecting, screening, and monitoring the manufacturers and suppliers of uncured Italian-style meats sold at Costco stores to assure that the food produced by those manufacturers and suppliers was free of adulterants and pathogens and was otherwise safe.

36.     Upon information and belief, before the foodborne illness outbreak described herein, Defendants Costco and Fratelli entered into a business relationship in which Fratelli agreed to produce and Costco agreed to market and sell a significant quantity of Fratelli uncured meats.

37.     Upon information and belief, Costco required Fratelli to execute a detailed vendor agreement requiring, among other things, that Fratelli comply with federal and state food safety laws and regulations.

38.    Upon information and belief, the vendor agreement allowed Costco to inspect the Fratelli food production facility and test Fratelli's uncured meat products, including the products sold to the Plaintiff and consumed by the Plaintiff.

39.    Despite its own practices, policies, procedures and agreements designed to prevent the production, processing, packaging, distribution and sale of contaminated food, Fratelli and Costco failed to do the following prior to selling Fratelli Antipasto Trays:

    a.  Properly inspect Fratelli's uncured meat production facilities;

    b.  Adequately monitor, oversee and inspect Fratelli's production techniques and safety practices;

    c.  Detect the unsafe and unsanitary conditions at the Fratelli production facility;

    d.  Test or require adequate testing of Fratelli Antipasto Trays;

    e.  Review the label on the Fratelli Antipasto Trays for regulatory compliance, adequate warnings, and clarity;  and

    f.  Otherwise identify and take appropriate action to prevent unhealthy practices present at Fratelli's production facility.

### COUNT I
### PRODUCTS LIABILITY - FAILURE TO WARN

40.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

41.    Defendants researched, developed, designed, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the contaminated Antipasto Tray that is the subject of the action, and in the course of same, directly

advertised or marketed the product to consumers, and therefore had a duty to warn of the risks associated with the use of it.

42.    The contaminated Antipasto Tray was under the exclusive control of Defendants and was unaccompanied by appropriate warnings regarding the risk of *Salmonella* and other severe and permanent injuries associated with its use. The warnings given did not accurately reflect the risk or severity of such injuries to consumers.

43.    Defendants downplayed the serious and dangerous risks of the contaminated Antipasto Trays to encourage sales of the product; consequently, defendants placed their profits above customers' safety.

44.    The contaminated Antipasto Tray was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert Plaintiff to the dangerous risks associated with it, including, but not limited to *Salmonella*. Even though defendants knew or should have known of the risks and reactions associated with the *Salmonella 1 4:i*, they still failed to provide warnings that accurately reflected the severity of the risks associated with the product.

45.    Plaintiff consumed the Antipasto Tray as intended or in a reasonably foreseeable manner.

46.    Plaintiff could not have discovered any defect in the contaminated Antipasto Tray through the exercise of reasonable care.

47.    Plaintiff did not have the same knowledge as Defendants and no adequate warning was communicated to him.

48.    Defendants had a continuing duty to warn consumers, including Plaintiff, of the dangers associated with the contaminated Antipasto Tray, and by negligently and/or

wantonly failing to adequately warn of the dangers associated with its use, Defendants breached their duty.

49.    Although Defendants knew, or were reckless in not knowing, of the defective nature of the contaminated Antipasto Tray, they continued to produce, manufacture, market, and sell it without providing adequate warnings and instructions so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by it.

50.    Defendants Fratelli and Costco exercised significant control over the design, processing, manufacture, packaging, and/or labeling of the contaminated Antipasto Tray product in that it bore Fratelli's private  label.

51.    Defendants Fratelli and Costco also knew or should have known of the defect in the product-that this batch of Antipasto Trays was contaminated with the bacteria *Salmonella*.

52.    Plaintiff's illness and associated injuries occurred as a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated Antipasto Tray product that Defendants manufactured and sold.

53.    As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated Antipasto Tray product and its packaging and labeling, Plaintiff sustained severe injuries as set forth above.

54.    In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights and safety of consumers, including  Plaintiff.

55.      Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/ or in conscious disregard of Plaintiffs' rights and the rights of other consumers.

## COUNT II
## PRODUCTS LIABILITY - DEFECTIVE MANUFACTURING AND DESIGN

56.      Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

57.      At all times material herein, defendant Fratelli was a manufacturer and seller of the contaminated Antipasto Tray that is the subject of the action and was in the business of manufacturing and selling like products.

58.      The contaminated Antipasto Tray product that defendant manufactured and sold was, at the time that it left defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella* 1 4:i*, a harmful and potentially lethal pathogen.

59.      The contaminated Antipasto Tray product that defendant manufactured and sold was delivered to Plaintiff. without change in its defective condition. Plaintiff thereafter did not misuse the product and used the product in a reasonably foreseeable manner by consuming the contents of the contaminated Antipasto Tray.

60.      Defendant Costco exercised significant control over the design, manufacture, packaging, and/or labeling of the contaminated Antipasto Tray product in that it bore Costco's private label.

61.      Defendant Costco also knew or should have known of the defect in the product- that this brand of Antipasto Tray was contaminated with the bacteria *Salmonella* 1 4:i.

62.     Plaintiff's illness and associated injuries occurred as a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated Antipasto Tray product that defendants manufactured and sold.

63.     As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated Antipasto Trays, Plaintiff sustained severe injuries.

64.     In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights and safety of consumers, including Plaintiff.

65.     Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of the rights of Plaintiff and other consumers.

**COUNT III**
**NEGLIGENCE AND NEGLIGENCE PER SE**

66.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

67.     Defendants owed Plaintiff, and other consumers, a duty to exercise reasonable care in the designing, manufacturing, marketing, advertising, distributing, handling, and selling their Antipasto Tray products. The observance of which duty would have prevented or eliminated the risk that Defendants' Antipasto Tray products would become contaminated with *Salmonella* lnfantis, and that Plaintiff and others would become infected with *Salmonella* Infantis due to the presence of Defendants' Antipasto Tray products. Defendants breached this duty and were therefore negligent.

68.     Defendants additionally failed to include an adequate warning of the significant and dangerous risks of *Salmonella* Infantis and without proper instruction to avoid the harm which could foreseeably occur as a result of using the product.

69.     Defendants owed to Plaintiff a duty to comply with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, handling, and sale of their Antipasto Tray products. Defendants breached this duty and were therefore negligent.

70.     Plaintiff was among the class of persons intended to be protected by the statutes, laws, regulations, and safety codes referenced above and pertaining to the manufacture, distribution, handling and sale of Antipasto Tray products.

71.     Defendants owed a duty to properly supervise, train, and monitor their employees, and to ensure its employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of Antipasto Tray products. Defendants breached this duty and were therefore negligent.

72.     Defendants owed a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption. Defendants breached this duty and were therefore negligent.

73.     Furthermore, Defendants had a duty to comply with all applicable health regulations, including the FDA's Good Manufacturing Practices Regulations, 21 C.F.R. part 110, subparts (A)-(G), and all statutory and regulatory provisions that applied to the manufacture, distribution, storage, and/or sale of the products or their ingredients, including but not limited to, the *Federal Food, Drug, and Cosmetics Act*, § 402(a), as codified at 21 U.S.C. § 342(a), which

bans the manufacture, sale and distribution of any "adulterated" food, and the similar provision in the *Texas Health and Safety Code*, Title 6, section 431.021, *et. seq*.

74.     Plaintiff is a member of the classes sought to be protected by the regulations and statutes identified above.

75.      As a direct and proximate result of the several breaches of duty set forth above, the Plaintiff's illness and associated injuries occurred.

76.     In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights and safety of consumers, including Plaintiff.

77.     Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of Plaintiff's rights and the rights of other consumers.

### COUNT IV
### BREACH OF EXPRESS WARRANTY

78.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effects as if set forth fully herein.

79.     Defendants expressly represented to Plaintiff that the contaminated Antipasto Tray was safe and fit for its intended purposes, and that it was of merchantable quality.

80.     Defendants expressly warranted, through its sale of Antipasto Tray to the public and by the statements and conduct of its employees and agents, that Defendants' Antipasto Tray was fit to feed to humans and not otherwise contaminated or injurious to health.

81.     The contaminated Antipasto Tray does not conform to Defendants' express representations because it is not safe, and causes severe and permanent injuries, including but not limited to significant and dangerous risks of *Salmonella Infantis*.

82.     At all relevant times the contaminated Antipasto Tray did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

83.     As a direct and proximate result of Defendants' actions, omissions, and misrepresentations, the Plaintiff's illness and associated injuries occurred.

84.     In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for  the rights and safety of consumer, including Plaintiff.

85.     Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of the right of Plaintiff and other consumers.

## COUNT V
## BREACH OF IMPLIED WARRANTY

86.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effects as if set forth fully herein.

87.     Defendants manufactured, distributed, advertised, promoted, and sold the contaminated Antipasto Tray.

88.     At all relevant times, defendants knew of the use for which the contaminated Antipasto Tray was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

89.     Defendants were aware that consumers, including Plaintiff, would use the contaminated Antipasto Tray for human consumption.

90.      Plaintiff reasonably relied upon the judgment and sensibility of defendants to sell the contaminated Antipasto Tray only if it was indeed of merchantable quality and safe and fit for its intended use.

91.      Defendants breached their implied warranty to consumers, including Plaintiff, because the contaminated Antipasto Tray was not of merchantable quality or safe and fit for its intended use.

92.       Consumers, including Plaintiff, reasonably relied upon Defendants' implied warranty for the contaminated Antipasto Tray.

93.      The contaminated Antipasto Tray reached consumers without substantial change in the condition in which it was manufactured and sold by defendants.

94.      The contaminated Antipasto Tray products that Defendants manufactured and sold to Plaintiff would not pass without exception in the trade and were therefore in breach of the implied warranty of merchantability and fitness for a particular purpose.

95.      As a direct and proximate result of the breaches of implied warranties set forth above, the Plaintiff's illness and associated injuries occurred.

96.      In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for  the rights and safety of consumer, including Plaintiff.

97.      Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/ or in conscious disregard of Plaintiff's rights and the rights of other consumers.

**COUNT VI**
**FRAUDULENT MISREPRESENTATION**

98.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effects as if set forth fully herein.

99.     Defendants made fraudulent misrepresentations with respect to the contaminated d Antipasto Tray in the following manner:

a.  Defendants represented through their labeling, advertising, and marketing materials that the contaminated Antipasto Tray was safe for use for human consumption; and

b.  Defendants failed to warn of any contamination and/or *Salmonella* Jnfantis associated with the Antipasto Tray.

100.     Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risks of the contaminated Antipasto Tray to consumers, including Plaintiff.

101.     The representations were made by defendants with the intent that consumers, including Plaintiff, rely upon them.

102.     Defendants' representations were made with the intent of defrauding and deceiving Plaintiff and other consumers, to induce and encourage the sale of the Antipasto Tray.

103.     Plaintiff and other consumers relied upon the representations.

104.     Defendants' fraudulent representations evinced their callous, reckless, and willful indifference to the health, safety, and welfare of consumers, including Plaintiff.

105.     As a direct and proximate result of the fraudulent misrepresentations set forth above, the Plaintiff's illness and associated injuries occurred.

106.     In addition, Defendants' aforementioned conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the rights and safety of consumer, including Plaintiff.

107.    Plaintiff is entitled to punitive damages because Defendants' conduct was wanton, grossly reckless, and/or in conscious disregard of the right of Plaintiff and other consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer and that upon trial of this matter, Plaintiff be awarded the following:

a.    Past and future actual damages;
b.    Past and future economic damages;
c.    Court costs;
d.    Pre-judgment interest at the highest rate allowed by law;
e.    Post-judgment interest at the highest rate allowed by law;
f.    Punitive damages; and
g.    All other relief to which Plaintiff is entitled.

## JURY DEMAND

Pursuant to F.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on all of the triable issues stated herein.

Dated: February 3, 2025

Respectfully submitted,

**CRAIN BROGDON, L.L.P.**

_/s/ Quentin Brogdon_
**QUENTIN BROGDON**
Texas State Bar No. 03054200
**ROBERT D. CRAIN**
Texas State Bar No. 00790525
4925 Greenville Ave., Ste. 1450
Dallas, Texas 75206
Phone: (214) 522-9404
Fax: (214) 613-5101
Email: Qbrogdon@crainbrogdon.com
Email: rcrain@crainbrogdon.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of February, 2025, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF e-Filing system, which will send notification to all counsel of record who have registered with the e-Filing Portal.

_/s/ Quentin Brogdon_
Quentin Brogdon